******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

# BROADRIDGE OUTPUT SOLUTIONS, INC. *v.*
# TOWN OF SOUTH WINDSOR
# (AC 48289)

Cradle, C. J., and Elgo and Seeley, Js.

*Syllabus*

The defendant town appealed from the trial court's judgments in two tax appeals filed by the plaintiff, B Co., a company that converts electronic data from clients and prepares printed documents for mailing to the clients' customers. The court determined, inter alia, that certain machines, used to insert and sort the documents as part of B Co.'s printing process, were exempt from personal property taxes pursuant to statute (§ 12-81 (76)). The defendant claimed that the court incorrectly concluded that the plaintiff's machines were exempt from taxation pursuant to § 12-81 (76) because the plaintiff's machines were not installed in a manufacturing facility because the plaintiff was not engaged in the manufacturing process. *Held*:

This court declined to review the defendant's unpreserved claim that the plaintiff's printing equipment was not entitled to tax exempt status, as the defendant had conceded at trial that the printing equipment was used for manufacturing and, thus, because it was not an issue before the trial court, no evidence was presented as to the printing process and the parties and the court did not address it.

This court declined to review the defendant's claims as to certain other equipment used by the plaintiff that the trial court had concluded was entitled to the tax exemption, as the claims did not challenge the trial court's conclusion that the machines were entitled to the tax exemption because their predominant function was integral to the manufacturing process of the printing equipment but, rather, challenged the court's conclusion that the printing process was not manufacturing.

Argued January 22—officially released July 7, 2026

*Procedural History*

Appeal, in the first case, from the assessment of municipal taxes on certain of the plaintiff's personal property, brought to the Superior Court in the judicial district of New Britain, Tax Session, and appeal, in the second case, from the assessment of municipal taxes on certain of the plaintiff's personal property, brought to the Superior Court in the judicial district of Hartford and transferred to the judicial district of New Britain, Tax Session, where the two appeals were consolidated and tried to the court, *Hon. Henry S. Cohn*, judge trial referee; judgments in

part for the plaintiff, from which the defendant appealed to this court. *Affirmed*.

*Jesse A. Langer*, with whom, on the brief, were *Brian C. Hoeing* and *Richard D. Carella*, for the appellant (defendant).

*Elliott B. Pollack*, with whom were *Meagan A. Cauda* and, on the brief, *Michael J. Marafito*, for the appellee (plaintiff).

*Opinion*

CRADLE, C. J. This appeal arises from two tax appeals filed by the plaintiff, Broadridge Output Solutions, Inc., pursuant to General Statutes § 12-119,[1] for grand list years 2020 and 2021, claiming that certain personal property installed in its facility located in the defendant municipality, the town of South Windsor, was exempt from taxation.[2] The defendant appeals from the judgments of the trial court, rendered after a consolidated trial to the court, in favor of the plaintiff, as to the tax exempt status of certain personal property owned by the plaintiff. On appeal, the defendant claims that the court incorrectly concluded that certain of the plaintiff's personal property was exempt from taxation pursuant to General Statutes § 12-81 (76)[3] because it is used for manufacturing. We affirm the judgments of the trial court.[3]

---

[1] General Statutes § 12-119 provides in relevant part: "When it is claimed that a tax has been laid on property not taxable in the town . . . in whose tax list such property was set, or that a tax laid on property was computed on an assessment which, under all the circumstances, was manifestly excessive and could not have been arrived at except by disregarding the provisions of the statutes for determining the valuation of such property, the owner thereof . . . may . . . make application for relief to the superior court for the judicial district in which such town . . . is situated. . . ."

[2] The plaintiff also filed tax appeals for the grand list years 2022, 2023 and 2024. The trial court issued stays in those cases pending this court's decision in this appeal.

[3] General Statutes § 12-81 (76) provides in relevant part: "Effective for assessment years commencing on or after October 1, 2011, machinery and equipment, including machinery and equipment used in connection with biotechnology [shall be exempt from taxation]. For purposes of this

The following facts, which either were found by the trial court or are undisputed in the record, and procedural history are relevant to our disposition of this appeal. The plaintiff is the owner of certain personal property (property) located at its facility in South Windsor. The property consists of various equipment used by the plaintiff to print data received electronically from its clients and to prepare the resulting printed documents for mailing to its clients' customers. Those documents "include credit card bills, utility statements, customer letters associated with those industries and insurance industries as well, [in other words] financial documents."

The plaintiff filed two tax appeals, pursuant to § 12-119, against the defendant, challenging the defendant's tax assessment of its personal property for the grand list years of 2020 and 2021. The plaintiff claimed that the tax had been wrongfully assessed because its property is used for manufacturing and, therefore, is exempt from taxation pursuant to § 12-81 (76).[4] The two tax appeals were consolidated for trial, which was held on May 13 and 15, 2024, before the court, *Hon. Henry S. Cohn*, judge trial referee.

Prior to the commencement of the presentation of evidence, the court confirmed with the plaintiff's counsel

---

subdivision, 'machinery' and 'equipment' . . . have the same meanings as provided in subdivision (72) of this section. . . ."

Section 12-81 (72) (A) (i) provides in relevant part that " '[m]achinery' and 'equipment' means tangible personal property which is installed in a manufacturing facility . . . and the predominant use of which is for manufacturing, processing or fabricating . . . ."

Section 12-81 (72) (A) (iii) defines manufacturing as "the activity of converting or conditioning tangible personal property by changing the form, composition, quality or character of the property for ultimate sale at retail or use in the manufacturing of a product to be ultimately sold at retail. . . ."

[4]In the alternative, the plaintiff claimed that the tax assessed on its property was "manifestly excessive and could not have been arrived at except by disregarding the provisions of the statutes and laws for determining the valuation and exempt status of such property." At trial, the plaintiff clarified that its claim that the assessment was excessive was not based on valuation but, rather, on its argument that its machinery was exempt from taxation.

that the plaintiff was claiming that the defendant's assessment of the plaintiff's personal property was incorrect because all of the personal property at issue "should have been classified—as the statute allows—as machinery that is not subject to taxation." Counsel for the defendant explained that "the evidence will show that we did indeed exempt some of the machinery onsite pursuant to the statute, so what is at issue is a subset, is a portion of the machinery that is onsite that's at issue." The court confirmed with counsel for the defendant: "So, certain machines, from your perspective, do not qualify for the exemption?" Counsel for the defendant responded: "That is correct, Your Honor."

During trial, it became clear that the plaintiff's property could be divided into four categories: (1) printing equipment; (2) inserting equipment; (3) sorting/presorting equipment; and (4) mailing equipment. The defendant's assessor had exempted the first category of equipment, the printing equipment, from taxation, so that equipment was not at issue at trial.

On October 24, 2024, the court issued its decision from the bench. The court began by recounting: "There are four classes of machinery at issue here . . . . The first category is printing equipment. The plaintiff receives data from various collectives that it uses, and it uses machinery to produce large rolls that take the form of bills to be sent to the consumer. These bills are attached to the rolls themselves. So, they come out of the machinery attached to these large rolls.

"The second category is what we might call inserting equipment. The machinery that this involves takes these bills that are attached to the rolls and prepare[s] these bills for insert into mailers.

"The third category, a sort and presort equipment. The machinery works with category two to produce finished envelopes in which these bills are now [sent].

"The fourth category is mailing equipment. This machinery moves the final product in the envelopes from

the plant floor to the waiting [United States Postal Service (USPS)] trucks [for] delivery. This equipment also . . . assigns zip codes to the envelopes."

The court noted that, in order to be exempt from taxation, "there must be a change in form by the—from what initially existed by use of the machinery . . . ."

The court then explained: "[L]ooking at . . . the evidence . . . there's no question, it could almost be by agreement that those are what the machines do, and I'm going to conclude the following: in regard to category one, that is this creation of these large rolls from data receipt at the plant, the parties are actually in agreement that those printers that do this function qualify for the exemption. The assessor has given the plaintiff this exemption. So, there's really no question about them. . . .

"[A]s to [the second category] the inserters, here the court concludes in favor of the plaintiff that the [defendant] has incorrectly classified this machinery [as] ineligible for exemption. These machines are taking the bill from the large rolls of paper. This . . . is manufacturing or it's officially tied to the first category [in that it is] . . . a predominant compliment to the manufacturing process . . . . [T]his is [true] for [the third] type [of machinery at issue] as well. So, that the third category of sorting is also—those machines are also exempt from taxation.

"However, there's a fourth category. That's mailing equipment. I conclude that it's too divorced from the manufacturing, so that these machines are not exempt. So, in other words, the step of relaying the final envelopes to the conveyor that takes them to the post office is a process which is still subject to taxation. . . . [T]he mailing equipment is too divorced [from] manufacturing [to] be exempt. . . . So, in other words, the step of relaying the final envelopes to the conveyor that takes them to the post office is a process which is still subject to taxation. Those are my conclusions based upon the facts that I see as proof on both sides and the conclusion of law based upon those facts."

When counsel for the defendant asked the court to articulate its rationale regarding the application of the exemption, specifically, "the exception to the exemption that . . . identifies sorters, presorters, and inserters as not being exempt," the court explained: "We know that the creating of the [printed] rolls [of paper] with the bills attached, in other words, $50 comes into American Express for Mrs. Jones and they take that $50 charge and relay it to [the plaintiff] and [the plaintiff] puts it into a machine, spits out . . . what we usually see as available consumer[s], but . . . it's not just there and put in the envelope, it's attached to a large roll of paper, and it could be a hundred bills on there like that. [Something has] to take that bill, which is adhered to the big roll, undo it from the big roll, and put it into an envelope. [It] takes a machine to do it. [Whether] that machinery is tax exempt is one of the questions, and my conclusion is that the taking of the bill, as it's eventually produced from the information, the data that company A, sends to [the plaintiff] . . . they create a roll with the bills attached, and . . . they . . . have the machine that clips it in some way from this big roll and places it in an envelope and gets it ready for the fourth process, which is that it's got to be sealed up and have an address on it [indiscernible]— So, the first three [categories] would be sufficiently a [manufacturing] function, and the last which is getting it ready to go to the USPS, is not manufacturing, but it's something else. It's . . . facilitating [the] mailing out [of] the letter. It's not the same [as] separating the bill from the roll of paper as in the [indiscernible] [categories] two or three. That clearly creates something new and it's also derived from the original equipment. But when we get to the fourth category, why should there be a tax exemption for mailing equipment which is a mailer. It's not a manufacturer thing. That's my conclusion."

The court also set forth its rationale for concluding that the third category, the sorting and presorting equipment, was exempt from taxation. The court explained: "I think it's sufficiently related to this machinery that creates the roll because it is a function closely associated

with it—it would be useless for the accomplishment of [the plaintiff's] purposes just to create a roll and not be able to undo it and get it ready for mailing it out. That's their purpose. Again, the sealing of the envelope . . . the—preparing for putting a stamp on it, I suppose, or metering it, and getting it to the trucks doesn't strike me as manufacturing equipment. So, that's my rationale."

The court further elaborated: "[T]here's a portion of approximately 600 total assets, which were involved in [the] separate process of printing, the post[printing] assets, the ones that take the printed product, fold it, stuff it, sort it, arrange it for coordinated direct shipment to [the] USPS. So, in postprinting collating, [indiscernible], those are all in my written orally announced opinion, exempt. . . . [W]hen [the] mailing equipment moves the final product, the envelopes, from the plant to . . . the USPS . . . that is not . . . officially connected in the manufacturing process to have an exemption. That's my ruling. . . .

"Because the cases say not only that they must be manufacturing, but there's also exemption if the machine supplement[s] the manufacturing process directly. So, that the manufacturing process, which is being exempt, direct manufacturing, that is the creating of the large rolls with the bills attached, cannot be accomplished without those assisted machinery which relates to it. . . . I think they can also [be] included in what is manufacturing. When you get to the issue, as I've been saying, of mailing, of assisting it . . . preparing it for mail, we're not doing anything which is manufacturing, where is it directly related to manufacturing and that group—so [categories] one, two, and three, are essentially manufacturing sufficiently to be exempt under the statute, where [category] four, which is the mailing [is not]."

The defendant thereafter filed a motion to reargue or for reconsideration, which the court summarily denied. This appeal followed.

The following statutes govern the issues presented in this case. Section 12-81 (76) exempts from personal property

taxes "machinery and equipment" and provides that those terms shall have the same meaning as provided in subdivision (72).[5] Section 12-81 (72) (A) (i), in turn, provides in relevant part that "[m]achinery and equipment means tangible personal property which is installed in a manufacturing facility[6] . . . and the predominant use of which is for manufacturing, processing[7] or fabricating[8] . . . ." (Footnotes added; internal quotation marks omitted.) Section 12-81 (72) (A) (iii) defines manufacturing as "the activity of converting or conditioning tangible personal property by changing the form, composition, quality or character of the property for ultimate sale at retail or use in the manufacturing of a product to be ultimately sold at retail. . . ." The issue of whether the court properly determined that certain of the plaintiff's personal property constituted machinery within the meaning of the foregoing statutes and was therefore exempt from taxation presents an issue of statutory construction, of which our review is plenary. *McHenry Solar, LLC* v. *Hampton*, 235 Conn. App. 355, 360–61, 345 A.3d 916 (2025).

On appeal, the defendant claims that the court erred in concluding that the plaintiff's personal property was

---

[5]We note that both § 12-81 (72) and (76) provide exemptions for machinery and equipment used for manufacturing. Subdivision (72), however, is "[e]ffective for assessment years commencing on or after October 1, 2002, but prior to assessment years commencing on or after October 1, 2011"; General Statutes § 12-81 (72); whereas subdivision (76) is "[e]ffective for assessment years commencing on or after October 1, 2011 . . . ." General Statutes § 12-81 (76). Because the plaintiff challenges the tax assessed on its property for the assessment year commencing October 1, 2020, it claims the exemption pursuant to § 12-81 (76).

[6]" 'Manufacturing facility' " means "that portion of a plant, building or other real property improvement used for manufacturing, processing or fabricating . . . ." General Statutes § 12-81 (72) (A) (ii).

[7]" 'Processing' " means "the physical application of the materials and labor in a manufacturing process necessary to modify or change the characteristics of tangible personal property." General Statutes § 12-81 (72) (A) (v).

[8]" 'Fabricating' " means "to make, build, create, produce or assemble components or tangible personal property work in a new or different manner, but does not include the presorting, sorting, coding, folding, stuffing or delivery of direct or indirect mail distribution services." General Statutes § 12-81 (72) (A) (iv).

exempt from taxation under § 12-81 (76). The defendant argues, for the first time on appeal, that all four of the categories of property at issue fail to meet the statutory definition of machinery which would have entitled that property to be exempt from taxation. The defendant did not assert such a claim before the trial court. Because the defendant's assessor had granted the exemption for the first category—the printing equipment—that equipment was not at issue before the court.

In its posttrial brief, the defendant stated: "[T]he overarching issue to be decided by this court is whether a group of the plaintiff's assets functioning at its mailing fulfillment facility, which pre-sort, sort, stuff and post mail for delivery are exempt under . . . § 12-81 (76) and (72). Applying Connecticut laws governing property tax exemption and personal property assessment to the evidence adduced at trial, it is abundantly clear that [the plaintiff] has failed to meet its burden of proving entitlement to tax exemption under these statutes for its postprinting assets." The defendant represented in its posttrial brief that the only disputed property at issue in the plaintiff's tax appeals was the "postprinting assets," specifically, the second, third and fourth categories of property, as enumerated and agreed upon by the parties. In fact, the defendant consistently represented to the trial court that its assessor had applied the exemption to the first category of equipment, the printing equipment, and that the property at issue was the postprinting equipment, the second, third and fourth categories of equipment. At no time did the defendant challenge the tax exempt status of the plaintiff's printing equipment before the trial court. It does so now for the first time on appeal.

"Our appellate courts, as a general practice, will not review claims made for the first time on appeal. . . . [A]n appellate court is under no obligation to consider a claim that is not distinctly raised at the trial level. . . . [B]ecause our review is limited to matters in the record, we [also] will not address issues not decided by the trial court. . . . The purpose of our preservation requirements is to ensure

fair notice of a party's claims to both the trial court and opposing parties. . . . These requirements are not simply formalities. They serve to alert the trial court to potential error while there is still time for the court to act. . . . The reason for the rule is obvious: to permit a party to raise a claim on appeal that has not been raised at trial—after it is too late for the trial court or the opposing party to address the claim—would encourage trial by ambuscade, which is unfair to both the trial court and the opposing party." (Internal quotation marks omitted.) *Guddo* v. *Guddo*, 185 Conn. App. 283, 286–87, 196 A.3d 1246 (2018); see also Practice Book § 60-5 (appellate court is generally not bound to consider claim not distinctly raised at trial).

In its appellate brief, the defendant argues for the first time that "the plaintiff . . . does not manufacture anything insofar as the exemption is concerned." The defendant contends that "the plaintiff is not converting or conditioning anything by changing its form, composition, quality or character." On that basis, the defendant contends that the plaintiff's personal property was not installed in a manufacturing facility and therefore is not entitled to tax exempt status. In so arguing, the defendant essentially seeks to withdraw the concession that it made at trial, that the printing equipment was tax exempt because it is used for manufacturing. Indeed, at oral argument before this court, when pressed as to its new position as to the tax exemption of the plaintiff's printing equipment, counsel for the defendant argued that this court should engage in a plenary review of all four categories of the property at issue.[9] In so arguing, the defendant essentially asks this court to conduct a trial de novo, which is not the province of this court, versus a de novo review of a legal issue.[10] Because the printing equipment was not at issue before the trial court, there

---

[9] We note that the trial court determined that the fourth category at issue was not tax exempt and the plaintiff has not challenged that determination. Presumably, the defendant would not want this court to review that determination.

[10] At oral argument before this court, counsel for the defendant argued that the defendant's assessor did not have the authority to exempt the

was no evidence presented as to the printing process, the parties did not address it in their closing arguments or their posttrial briefs, and the court did not address it. The defendant's challenge to the tax exempt status of the printing equipment therefore is not properly before us.

As to the second and third categories of property at issue, rather than challenge the court's conclusion that that property was entitled to tax exemption because its predominant function was integral to the manufacturing process of the printing equipment, the defendant challenges the court's conclusion that that equipment was entitled to tax exemption on the ground that the printing process was not manufacturing.[11] For the reasons stated previously, that claim is not properly before this court. We therefore decline to review the defendant's claims concerning the second and third categories of property at issue in this case.

The judgments are affirmed.

In this opinion the other judges concurred.

---

plaintiff's printing equipment from taxation. At no time did the defendant raise this argument before the trial court, nor has the defendant provided any legal authority in support of it.

[11]In its principal appellate brief, the defendant argues that "[c]ategories two through four do not fabricate personal property [in] a new or different manner." Because the court found that the equipment in those categories was predominantly used for manufacturing, we need not address this argument.